in his official capacity as Acting Secretary of U.S. Department of Homeland Security. Mr. Ward for the appellant, Mr. Serino for the appellate. Morning, counsel. Mr. Ward, please proceed when you're ready. Thank you, Your Honor. May it please the court, my name is Larry Ward. I'm representing Peggy Wilson, who is an employee at the Department of Homeland Security. This is a Title VII case involving Mrs. Wilson, who at the time at the age of 59 years old, applied for a position of Supervisory Financial Management Specialist at the Department of Homeland Security. She had served as a bank card manager also at the Department of Homeland Security two years prior to the time that she had applied. And she had been bank card manager for six years between 2006 up into 2012, in which time she received outstanding performance evaluations from four different supervisors. After returning in 2014, she applied for the job, which was one notch above the job that she had previously held. During the selection process, her resume was not forwarded to the next level, which would have been a full panel, which consisted of three persons, two of whom were her previous direct supervisors and one of whom was a another. Mr. Ward, can I ask some questions about representations in the brief that you filed? The statement you just made about her resume not being reviewed by the panel is really the first one. You say throughout your brief, including on page 11, that Ms. Burris did not review the resumes. Where's your support for that in the record? Well, the support in the record is her affidavit and the appendix. I've included her entire affidavit. Can you remind me what page of the appendix her affidavit is? Yes. I believe it's pages 132. I'm sorry. Give me just one second. Oops. I'm sorry, I don't have that appendix before me at this particular time. Is it Christine Burris you're talking about? Yes, that's J 237 is where it starts. If you could bear with me then, Mr. Ward, and thanks to Judge Millett. Could you tell me, check out that declaration that starts at J 237. I don't read it to say one way or another whether Ms. Burris reviewed the resumes. Can you tell me where you think that it does say that she did not review the resumes? Yeah, there was one particular statement. I believe it was number 17, where she says specifically that she only participated in one aspect of the entire selection process. She says I was not privy to the process of the actual selection of Mr. Taylor. I don't view that as her saying that she didn't review the resumes. Do you view that as her saying expressly that she did not review the resumes? I reviewed the entire affidavit and in reviewing that entire affidavit, I am summarizing what her affidavit says cumulatively. I read that to say that she did not participate. And when Ms. Morgan Loudon on JA 192 and 193 expressly says that Ms. Burris did review the resumes. Well, that's why doesn't why isn't that why? Why doesn't that disprove your point? Well, it doesn't it doesn't prove the point, because they're simply saying that Mrs. Morgan Loden stated that Mrs. Burris was present at the meetings. But when you read Morgan Loden's testimony. At the I believe on the third page of her testimony, she indicated that she wasn't sure. Let me let me be specific, Mr. Ward on page 22 of the deposition on JA 192. She's asked who aside from yourself, who else helped you review these 47 individuals? And she says Christine Burris, as well as Jeff Bobich. And then also on page 26. She's asked, so are you certain that Christine Burris would have been included in the process, trying to determine which of the 47 individuals should be selected? And she says yes. So when you say Ms. Burris didn't review the resumes, you're contradicting the testimony of Miss Morgan Loudon. Correct. Absolutely. You are. OK, so you also say the regulation required that Ms. Burris participate in writing questions. You say that on page 31 of your brief. Can you tell me where in the regulation it says that she was required to participate in writing the questions? Well, I guess the point regarding the Sparrow's is that it's really a question about Mr. Ward. Mr. Ward, it's really a question about the regulation. Can you tell me where in the regulation says that Ms. Burris was required to participate in writing questions? No, I'm reading the regulations broadly. I'm reading them from the standpoint that if you were a manager working at a large corporation or a large agency and you're familiar with regulations 335, as well as the whole body of Supreme Court precedent, which requires that individuals should be treated equally. And also, Mr. Ward, I'm asking specifically what text in the regulation requires participation of a minority panel member when when writing interview questions, it may be great policy. I'm not disagreeing with that. I'm just saying where specifically in the regulation does it say what you say the regulation says. OK, there is a Department of Homeland Security regulation, which is not in the. Appendix and its regulation number. 0 4 8 0.1, which is dated March 4th, 2003, and essentially what it says is that. The Department of Homeland Security should adhere to all laws and regulations that provide equal opportunity for all Americans, regardless of race, color, religion, sex, national origin, age or handicap. So you're saying that does not specifically require the participation of minority panel member and Ryan questions. It makes a general statement that you're interpreting to mean that. Absolutely. OK. On page 12 of your brief, you say the regulation required the panel to keep their interview notes. Can you tell me where in the regulation the panel was required to keep contemporaneous notes? I believe it's also in Regulation 335. And I don't see how to point that out. That's if you give me you gave me the number. I'm happy to go look at it after oral arguments. Three more, if I may. You say this is on page 10 of your brief as well as page 11 and then again on twenty six and thirty eight and then four times in your reply. You say Ms. Morgan Loudon, quote, withheld Wilson's resume. Where in the record is that? I'm sorry. Could you repeat that, Your Honor? Where you say that Ms. Morgan Loudon withheld Wilson's resume. Where in the where in the record does it say Ms. Morgan Loudon withheld Wilson's resume? I think that they were. I think that was an omission in their answer. And also in. I can't point to specific. It was in her. It was in. It was in Morgan Lowen's deposition excerpt where she indicated that she had she admitted that she had withheld the resume for the reasons that she did not feel as if it represented the type of leadership and projects that she saw. She and Mr. Bobbitt saw it. So you don't mean that she withheld the resume from Ms. Burris or withdrew the resume from those that would be reviewed by others. You just mean she didn't think that the resume was good enough to receive an interview. Am I interpreting you correctly? That's correct. By the full panel, which would have included Mrs. Burris. Right. It's on page 31 of your brief, as well as five other places. You say the district court erred when it found the selectee significantly better qualified for the job than the appellant. The district court actually said that the burden is on you and you can. This is from J.A. 310. Wilson cannot establish that she was significantly better qualified for the job than Taylor. Would you agree that you're flipping the burden there? I believe that the burden is upon, I think. I'm sorry. Could you repeat that question, Your Honor? You say that in your brief that the district court erred when it found that the selectee, who in this case was Mr. Taylor, was significantly better qualified for the job than Ms. Wilson. Yes. Right. But the district court actually simply found that you did not meet your burden to establish that Ms. Wilson was significantly better qualified than Mr. Taylor. Which brings me to the point, which is the whole issue here is that we believe that the district court clearly was erroneous. Do you think the district court got the standard wrong? We think that the district court was clearly erroneous in this fact-finding because it was... Mr. Ward, that's not my question. Do you think the district court got a standard wrong when it said Wilson failed to establish the standard being on Wilson, that she was significantly better qualified for the job than Taylor? I know you don't agree with the fact-finding. Yeah. I'm not expecting you to. I'm just asking, do you think the district court got the legal standard wrong when the district court said it was your job to establish that Wilson was significantly better qualified than Taylor? No, I agree with that. This is my last question on your brief. You say on page 12 and 14, and then again in your reply, that Mr. Taylor had no supervisory experience, but he actually led a team of nine in developing the methodology of allowing 15 reporting components to allocate major program costs. I guess the reason, this is my last question, whether we agree with you on whether the district court erred or not, some courts have said that grossly inaccurate statements in an appellate brief subject an attorney to Rule 38 sanctions. And I wonder why you don't think that the six statements that I've gone through are not grossly inaccurate. I don't think that they're grossly inaccurate, because I think if, for example, you take the issue of whether Mrs. Burroughs' affidavit shows that she did not have an opportunity to participate, I think that it is accurate. And I think that at the very least, there's a disputed fact there, because the defendant is trying to say that she did not participate, and we're saying, the defendant is trying to say that she participated, and we're saying that she did not. And I think that that affidavit shows enough in the context of the Morgan Lowland deposition, in which she states that she was not sure whether Mrs. Burroughs participated or not. I think that's enough to create a factual dispute. However, I really think that she did not participate, and that's my belief. And with regard to the issue of whether who has the burden of the qualifications, I think you set forth the standard under ACCA versus Washington Hospital Center, under McDonald Douglas versus Green, under Foreign Corp versus Waters, under Teamsters versus U.S. And the idea is that the plaintiff does have the burden of showing that they are qualified, but how can you prove that burden if the judge is withholding facts? My client worked in an outstanding position, doing outstanding work for six years, and I specified that… There again, Mr. Ward, didn't the IG report say that things were not going exactly swimmingly when it came to the bank card programs at the Department of Homeland Security? I'm sorry, did you repeat that? Didn't the Office of Inspector General issue a report saying that the performance of the bank card offices in the Department of Homeland Security had problems, significant problems? The issue was whether they were related to my client or not, and I think I set forth in my brief very specifically that it did not have anything whatsoever to do with my client because… Well, my client… I'm sorry, could you repeat that, Your Honor? Did the government come forward with any evidence that those Inspector General problems were things that were within Peggy Wilson's control? No, they did not, Your Honor. And I specified in my brief that… Didn't she actually lead a response to part of the Inspector General report to fix the problem? No, they did not, Your Honor. I thought she led a response. Maybe it was a different… I'm sorry. Yes. I thought she didn't lead a response to that. I'm sorry. Yes, she did. Yes, she responded. She indicated that she was in a policy part of the Department of Homeland Security, and the issue that arose there was related to a lower-level practical problem. And ultimately, she was asked to assist them in resolving that practical problem. And as a result of helping them resolve that practical problem, she received the highest performance evaluation from her supervisor, who also supervised a selectee, Robert Taylor, who got the job. And his opinion, as I pointed out in my brief, was that he thought she was significantly better qualified for the position than Mr. Taylor was. And he would have known because he filled the position. Mr. Taylor, he would have known because Mr. Taylor filled the position that he had after he left the department. Okay. Let me make sure my colleagues don't have additional questions for you, Mr. Ward. And hearing none, why don't we hear from the government? Mr. Serino, we'll give you some rebuttal time, Mr. Ward. Thank you. Good morning, Your Honors, and may it please the Court, my name is Paul Serino for the defendant in this case. Mr. Serino, can I start where Mr. Ward left off? Did the Boyd affidavit say that Boyd was taking a position on who was significantly better qualified? No, Your Honor, that's not our reading of the affidavit. Mr. Boyd supervised both of the Ms. Wilson and Taylor in 2011, which is three years before the job announcement in this case, and didn't speak to who was substantially more qualified for the position at issue. And he didn't even know. Well, given his very surprise to learn about the hiring process, I understand that's your reading of his testimony. My question to you is simpler. Would it be irrational for a jury to look at that and infer that Mr. Boyd concluded that Wilson was more qualified? It would, Your Honor. It would be irrational for a jury to conclude that? Let me say it this way. I don't think it's a reasonable inference. That's the same thing. So it's irrational for a jury to read his very surprise to learn that Taylor got the position given his experience working with both of them and the accolades he showered on Ms. Wilson, his lengthy experience with her, and Mr. Taylor's lack of supervisor experience. It would be irrational for a jury. To conclude that Wilson was substantially more qualified for the position at issue in this case, which he didn't know about. In his former position. Right. That would be irrational for the jury to conclude to? Well, you know, there was a new director that was the decision maker to select. And I'm not disputing your reading of the evidence, to be clear, and all your arguments. They're not mutually exclusive at all. If we put all this stuff in front of the jury, and just on this narrow part, there's other disputes in this case or potential disputes in this case. Mr. Boyd says, Look, I worked with both of them. I worked with her extensively. Here's all the things we did all the accolades I couldn't go anywhere without her because she was the key person on this in the department. I was very surprised. It would be irrational. And I don't want to use the significant qualifier I'm following our case, Hamilton versus Geithner so I just want to know whether it'd be irrational for a jury to factor, let's just say factor that in. Could that help them infer that he thought at least she was more qualified for the job. Your Honor, I, I think the most that you can infer from the Boyd affidavit is that he believed, based on his experience that Wilson was a better employee than Taylor was more qualified. As of 2011, as of 2011. Okay, that's fine. That's fine. There were, you know, Taylor had three additional years of experience that factored into his selection for this position in 2014. I thought there was a two year gap on my rungs or a three year gap. Are you including the hiring process time. I believe his affidavit speaks to the 2011 time period, and the job announcement was 2014. Okay, thanks. Well, Your Honor, these. That's the issue is whether there's admissible evidence in the record from which a reasonable jury could conclude that the non selection of Wilson was due to unlawful discrimination and, and our view is that there is no such evidence in the record and that the court. No evidence or insufficient evidence. I think I'll say insufficient Your Honor that from which a reasonable jury could make that conclusion. And I'm sorry to step on your questions, Mr. Judge Walker. I'm sorry. No, not at all. All right. So if you look at the posting for the job where they wanted specialized experience, including overseeing the bank card program and supervising staff. And Wilson were to introduce admissible evidence, which she seems to have six years of experience managing the bank card program and directly supervising three individuals and indirectly supervising 66 others. And then the jury also heard that Mr. Taylor had, as he said repeatedly in his testimony, no bank card experience and very little supervisory experience, but to be sure you would have your evidence of the other skills that he had. Could a jury factor. A rational jury factor. How closely was Wilson's resume mapped on to the actual job description, could they factor that into a decision about whether there was pretext or discrimination or would it be irrational to do that. I think the candidates qualifications are is a basis from which the jury could, you know, infer pretext in the event that one. The one candidate was substantially more or more qualified than the other. What evidence did they have what evidence. I think what one of the things that was relied on here was that mysterious is a bobbage bobbage bobbage bobbage and Morgan Loden talked about the evolution of the position. Other than them referencing that in terms of then described Mr. Taylor's qualified after the fact, describing Mr. Taylor's qualifications was there external evidence. That the position had evolved and so significantly in two year period. I think that, you know, Director Bobby was relatively new to the position that he had to fill here. The context of the announcement was the need for stronger internal controls and risk prevention, which required a broad set of skills that was different from what the position had demanded in the past. Wilson had if evidence were introduced that Wilson had implemented internal control checklist for the bank card program and work with 66 program coordinators to ensure internal controls. And then the argument was that the position had evolved to emphasize internal controls could a rational jury factor that evidence in and determining whether this evolution was the basis for picking was a genuine basis for picking Mr. Wilson out of the starting gate, honestly, she wasn't even allowed to interview. Don't see how. I just don't I just don't see how that. I'm just asking. Not who wins. Yeah, there's something irrational about a jury's reliance on that kind of those inferences and comparisons of evidence, they might be wrong and you might be able to disprove it but is there something irrational as a matter of law about allowing a jury to weigh those things. I don't see any facts in the record that that the juries would normally way, and take into account. However, in this case I don't see. I wouldn't be any inference from from those facts that could give rise to preachers, I'm just I'm going to add all this this we can all add it all up together we don't have to win everything on one of these right she doesn't Wilson doesn't have to do that. So Morgan low and loading them both both said that they were looking for an ability to lead projects and people, and to lead change and Taylor, I think, might have been three times said he hadn't had supervisory roles, maybe at the end he'd finally had a little, a little one. I would, I think, Jerry consider that you wouldn't consider it. Contrary to law to allow a jury to rely on evidence like that as part of other things, and deciding whether to infer discrimination or not or pretext. Well, I think what Taylor was referencing was that he, he wasn't a supervisor in the sense of being in a position to discipline people hire fire people. And I believe the, the agency was looking considered supervisory experience to include, you know, supervising a project or leading a team. Oh, I thought they said lead people and projects, am I wrong about that. Well, we wanted leading projects, leading a team to accomplish a project, and he, and he led a nine person team, so that I think from the agency's point of view that will qualify as supervisory experience. Okay. There were some questions from Judge Walker about Morgan Logan's testimony on her deposition, sorry not testimony on whether Miss Burris had been insulted at the interview stage. But Morgan Logan said they didn't all sit together. They talked one at a time with Mr Babbage correct. I'm on j 192. That was her testimony. Right. And so, she didn't really know whether he talked to Mr. Miss Burris or not he should just said, he's extremely thorough and detailed in knowing process. So that's what she was relying on. She did, she was not present for a conversation between Babbage and Burris regarding, and she hadn't even really asked about it there's nothing here to indicate she'd asked Babbage about whether Miss Burris was involved, she, she didn't inquire about their discussions regarding the selection, but there was no dispute admissible as evidence then on, on, on what point I mean the speculating that she thinks Mr Babbage would have talked with Miss Burris but she doesn't know what but there's no dispute that Miss Burris reviewed the 47 resumes, including Wilson's. Well, that said, she says it's it's it's just it's kind of confusing what she did or what she thought her role was because Judge Walker's pointed out that that she says she certainly wasn't involved in the final interview stage. Mr. Taylor but she also says a couple times I have no basis for comparison, when asked to compare the two of them so that's what's kind of confusing and it's you know it's a, it's a declaration that's not a deposition where questions are asked so it's kind of confusing. Well, inferences are that would come from that. I don't I don't see the confusion Your Honor, I have no basis for comparison. Right, because she can't compare Babbage versus Taylor, but she reviewed the 47 resume Wilson versus Taylor. Well then she would have a basis for comparison if she had reviewed the resumes and she was aware of this evolution in the position she'd have, she'd have some basis she might. She wouldn't be able to evaluate their oral skills in an interview, but she wouldn't have a basis for comparing their, their, whether they were qualified. Right. Based on the resumes that she reviews. She have been privy to this evolution in the position to. I, I don't think that that's covered specifically in the record, but it appears that Mr Babbage explained to both Morgan Loudon and RS. You know what they were looking for to fill the position. Okay. Thank you. Sorry, I've been. I've been too greedy here my question asking I apologize. I noticed my time is expired. And if there are no further questions will rest on our brief and ask the court to affirm the district court's judgment. Thank you, Mr Serino. Mr Moore will give you two minutes for rebuttal. Yes, your honor. Thank you. Yes, I want to direct my attention to the statement that was made by counsel for DHS regarding Mr. Taylor, indicating that Mr Taylor had three years of experience between 2011 and 2014 that may have been relevant to the bank card job. I just wanted to say that, that, that, that experience probably was not relevant in as much as Mr Boyd, who had supervised Mr Taylor, and who worked at the adjoining position. Also, within the same department, and who was in charge of bank cards would have known if Mr Taylor had done bank card work, because that bank card work would have had to come through his particular department. So, any indication that he that Mr Taylor would have picked up three years of experience between 2011 and 2014 regarding bank card. It's not accurate. And also, one last issue, your honor, regarding internal controls. One of the issues in this case that was raised by the government was that Miss, my client did not have internal control that's completely false. I indicated that in a deposition that she did have internal controls experience. And if you go back and look at the statements made in our statement of facts to which the government agreed to, it showed that she had plenty of internal control experience in addition to the bank card experience. Thank you, counsel. Thank you to both counsel. We'll take this case under submission.
judges: Srinivasan, Millett, Walker